(Lucas County, O., Common Pleas.)

### EDGAR R. VINCENT v. TILLIE B. VINCENT.

*Sec. 3140-1, R. S.—Rights and duties of parents separated or divorced as to care of children—*

(1). The statute makes no provision for the parties charged with adultery or other wrong-doing to be made parties in proceedings under this statute, but the court holds, that if such parties could come in, they would certainly be allowed to do so upon proper application made.

(2). No man has a right to take another woman into his house while he is

living with his wife, and have her live there as a member of his family, unless she is a relative or under peculiar circumstances.

(3). Disposition of the children in this case under the facts.

The court has doubt whether under this statute its jurisdiction is exclusive.

PRATT, J. (orally.)

This case is not simply "near a tragedy"—as has been remarked by counsel, but it is a tragedy. I cannot think there is anything that I can say about it, however, that will do any good, except to make such an order as I think ought to be made, unless it be to simply state the reasons why I made the order.

In addition to the decisions upon the subject, is a recent statute—of 1893—which not only recognizes these decisions, but puts them into statutory form. This statute makes the father and the mother equal—not, as has been said by counsel, the father first and the mother second, but it specially provides that they shall stand equal. It provides in repeated terms, that the welfare of the children is the subject for consideration by the court. And this statute has this specific provision in it: "That the court, upon hearing the testimony of either or both of said parents, corroborated by other proof, shall decide which one of them shall have the care, custody and control of such offspring, taking into account that which would be for the best interest of said children; provided, if such children be ten years of age or more, they be allowed to choose which parent they prefer to live with, unless such parent so selected by said children be unfitted to take charge of said children by reason of moral depravity, habitual drunkenness or incapacity, then said court shall determine the custody of said children. If, upon such hearing, it shall be proven to the court that both parents are improper persons to have the care, custody and control of such children, the court may, in its discretion, either designate some reputable and discreet person," etc.

Now there are two of these children that are ten years and over in age, and thus come within the provisions of this statute. They both have exercised this right which is given to them by the statute, which throws the burden of proof upon the mother in this case to show that the father is not a proper person to have the charge and custody of these two children.

The range of testimony here has been very large and it is lamentably contradictory—lamentably so. The court is required to use the utmost charity, in view of this testimony, and it is its disposition to do so in all these cases. Of course, the persons who are interested are terribly interested; they are relatives and friends, and are necessarily very much interested, and great allowance must be made in all these cases for partisanship. There are no contests which come to this court which arouse such deep feelings among the parties directly interested, and among their friends, as that question of the custody of the children. We have got to look at the testimony of the witnesses upon both sides, given under these circumstances, with a great deal of allowance. Now, I do not think it is necessary in this case for me to determine between the conflicting statements of very much of the testimony which has come before me. There are some things that are plain, and some where we have got to read between the lines. We have got to view this testimony given here in the light of common sense and in the light of common experience. Lawyers must look at it in the light of their experience in the trial of cases; and we must all look at it in the light of common every-day experience.

Now, if the plaintiff here were clearly—as the gentlemen have said—proven to have been guilty of adultery with this woman, as is charged, that would show a state of moral depravity which would not entitle him to the custody of the children. If it were true that he had attempted to poison his wife, it would be a depth of moral depravity which could hardly be sounded. But I cannot convict either him or Miss Mulligan—because it would amount to a conviction in this class of cases, as I have indicated; but the statute makes no provision for the persons who are thus charged, to be made a party to the suit, with any jurisdiction. If such parties could come in, in any case before me, I certainly should allow them to do so, upon proper application being made. That

there has been a great deal done between the plaintiff and Miss Mulligan that ought not to have been done, is true. No man has a right to take another woman into his house while he is living with his wife, and have her live there as a member of his family, unless she is a relative, or it be under some peculiar circumstances; it is a dangerous thing. The tendency of it is, of course, to create talk and scandal, whether it is true or not. I think these relations ought to have been stopped long ago, and they ought to be stopped now—to be stopped any way for the good of all the parties; but I do not think that an adulterous intercourse has been proven. The testimony of the only witness that testifies to direct acts, it seems to me must certainly be mistaken as to the actual facts; it is not the way in which such intercourse would have been had, if there had been a desire and a purpose to have it. It seems to me that it is utterly impossible that the act should have been committed there in the cellar, and it is beyond the pale of moral possibility, to mind. Nor do I think it reasonable that it was committed at the other place named. Suspicion would probably be roused by the fact of their being together, and her being in the house, but I cannot say that adulterous intercourse has been clearly proven, even with the testimony as it stands. Of course it is said in these cases that the parties would deny it anyway; but, looking at the reason of the case, if they had a disposition to do it, it would not have been done at the time and under the circumstances named. So far as this poisoning is concerned, the suspicions of the nurse were naturally aroused, but it is incomprehensible that any man who was sane, however corrupt he may have been, should have undertaken to poison his wife when she was under the charge of a doctor, and a trained nurse, and when there were numerous people about, and I think that is simply the imagination of a suspicious person.

Now, so far as the wife is concerned, as I have already intimated, the charges made against her, of drunkenness, and want of care of her house, and want of care of her children, they have not been sustained by the proof. I have no golden scales with which to weigh the keeping of a house—although I have been a householder for a good many years. So far as drunkenness is concerned, of course the statute expressly provides that as one of the reasons why a parent should be deprived of the custody of children; but that is not proven. There has been testimony for and testimony against it, but I simply say it is not proven—it is not satisfactorily proven.

But those children are here. The father's earnings must be devoted to their support, and must be devoted to the support of the wife, as he has undertaken all the obligations of a husband and a father. So far as I am concerned, I am disposed to hold the parties to the obligations which they have assumed. I do not think I need to say anything further, or to discuss this matter. I do not want to have it go out that the court had found so and so as to all these things, but I will indicate here the line upon which I think the decree should be prepared here by counsel. As has been said, it is an important matter, and these children are the wards of the court, and may be changed as circumstances change; but I will indicate the kind of decree that I have determined in my own mind should be drawn.

So far as the two younger children are concerned, of course the mother is the natural custodian of those two children. For me to say that children eight years of age should be taken from their mother, would require a showing of particular unfitness. The custody of the two older children, I think, should be given to their father, under conditions and regulations:

The first point of the decree will be that the custody of the two older children shall be with their father.

The second point of the decree should be that the father shall, within a brief time, say three days or five days—I don't want to indicate as to those times, exactly—that he shall ship to the mother, at Columbus, freight paid, a suitable proportion of the furniture in the house to enable her to fit up at least one room—a bed room, for herself and the two children; and that in addition to that he remit to her the sum of, say, $50, in money, to enable her further to fit up a home—

remit it to her for that purpose, to enable her to fit up a suitable home.

Third, I would say that within a suitable time to enable the wife to prepare a home and fit it up—say ten days or two weeks—and these matters should be arranged between the attorneys, unless they cannot agree, in which case the court will fix it—that the plaintiff either himself take, or send under suitable care, the two children to the mother at Columbus, prepaying all expenses of sending them there, and deliver them to her, and accompanied, of course, with their clothing and their necessary belongings—that is, the proper belongings of such children.

I think further in this regard, as to this next to the oldest child (and I want to say that I have had more trouble in reference to that child than either of the others in my mind) I think that provision should be made that either she be sent with the two other children, or within some limited time thereafter, by the father, under suitable care, to the mother, with the privilege of remaining with the mother for a reasonable length of time, say anywhere from two to four weeks, under the mother's influence. She is only a little over ten years of age, and I think it is only proper that the mother have a chance to have her and to be with her for a certain length of time. What should be done thereafter, is dependent upon some further action, which can be taken, of course; but if nothing further is done she can be returned to her father.

I think the older child (who I judge has considerable feeling against her mother) I think that she, nevertheless, should be permitted to visit her mother at stated times—say once in two or three months—and remain with her for a few days, or a week, and that the second child should be permitted also to visit her mother; and if her mother is going to live in Columbus, there will be no opportunity for her visiting the children here, and there should be particular provision for them to visit her at Columbus—I mean of course a sufficient length of time for a visit, some few days or a week, or some such a time.

Now as to the provision to be made for the support and maintenance of these children. The plaintiff is earning $166 per month. He seems to be a capable man, and I should judge he is a man capable of earning $150 per month, at least. He has two of the children to provide for. He has a father and mother who seem to be substantially dependent upon him, and he has a duty to them, although he is a married man. His mother would necessarily have the charge of the children while they are in his possession, as the result of the fact that he is required to support himself and support the father and mother and support the two children, pay his rent, and keep up his house here. He cannot be expected to be placed in a position where he can lay up money under these circumstances, but these responsibilities are all upon him. I think for the present at least—until the further order of the court—in addition to the $50 which he should be ordered to pay for the purpose of assisting in the fitting up of a home for the wife and two children at Columbus; that he should also be required to pay (I don't know what the rents are in Columbus; but in Toledo, rooms, or a cottage could be obtained suitable for them probably for $10 per month). I think he should pay that, and pay it monthly in advance. He should be required to pay for the support, of course, of these children, or their boarding, if they live together; their clothes and their school books, if they go to school—and all these things must be done, and it should be put in the order that they are to be done. I think he should pay to each of the children $15 per month, in addition to the rent of $10 per month, and $25 per month to the mother, which would amount to the sum of $65 per month, and that should be remitted to some bank or person in Columbus, so that she can go to a place designated and get her money, which money should be paid in advance—somewhere from the first to the tenth of each month.

The costs of this case, of course, should be paid by the plaintiff.

So far as attorney's fees are concerned, I would say to the attorneys that these cases are not profitable from a money point of view, and they cannot expect them to be made profitable here. I do not know that I need to enter into that matter at all, however until it becomes necessary for me to do so. Mr. Thatcher:

"There is a motion on file, and I would like to have the court pass upon it now."

Mr. Tracy: "I should prefer to have the court pass upon the question as to the allowance of fees to be paid to the attorneys."

The Court: How much have the attorneys received, so far?

Mr. Thatcher: "Mr. Pugh. $20; and I have received the same amount. A sum additional was sent to Kansas city, to their attorney there; but we have each received $20 for our services"

The Court: You will have to wait a little for your money here. The plaintiff in this case has to meet these obligations to his wife and his children; those have got to be paid in any event, and I do not want to hinder him in that They should be paid promptly.

Mr. Thatcher: ' We are willing it should be made secondary to that."

The Court: I should think that it would not be unreasonable that the attorneys should have $50 a piece further in the case at such time as he can fix in the future as will not embarrass the plaintiff in making these payments to the children and taking care of himself.

So far as this matter of the furniture is concerned, of course it has to be determined what furniture he shall send there. These matters all ought to be treated in a reasonable manner and such provision made as will be the least onerous to the plaintiff and the most beneficial to the defendant.

If the defendant wants to interview these children, she should have an opportunity, and I will make any order you may suggest in that regard—any reasonable order.

Mr. Tracy: "The children were brought down this forenoon, and also this afternoon, and she may see them, without any order, if she wishes to."

The Court: A reasonable arrangement should be made in reference to that. All this matter is appealable, if you want to appeal it.

Mr. Tracy: "A formal entry of notice of appeal may be made, and the court will fix the bond. There is another thing: the court has awarded the custody of the two smaller children to Mrs. Vincent, and said nothing about their father visiting them, or their visiting their father. In as much as he has a home here and is taking care of them well at present, I would suggest that they might be permitted to come here and visit him, as well as the other children to go to Columbus."

The Court: I do not care to make in this order any specific provisions about that matter, but I think that these children while they are here should be cared for by their grandmother, and I will say that the future action of the court will depend quite largely upon the question of whether the relations between Mr. Vincent and Miss Mulligan continue for any length of time, and that upon the basis, not that I find that there is anything criminal between them, but solely for the good of the children. There is nothing as between the parties, that I can say; but these children while they remain in Toledo, should not be in a position, any more than necessary for any of these matters to be thrown up against them among their schoolfellows. The order that I enter upon the docket will be very brief, but you can get from the stenographer the matter for the preparation of your decree.

Mr. Tracy: "What provision will there be in regard to Mr. Vincent visiting the younger children here?"

The Court: Provision should be made for him to visit them in Columbus, certainly and he should have an opportunity at reasonable times; and also there ought to be opportunity for the children in Columbus to visit here. You may put that in the decree.

Mr. Thatcher: 'The suggestion refers to the relations between Miss Mulligan and Mr. Vincent?"

Mr. Tracy: "That does not go into the decree?"

The Court: That does not need to go into the decree; I simply say that that will govern the future action of the court. This is a question of jurisdiction, and I do not know what view the circuit court would take.

Mr. Thatcher: "I think it has been decided, in a recent case, that this court has exclusive jurisdiction."

The Court: Under this statute, I do not know. It provides some things which were never provided before. It was passed in 1893.